# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

IN RE:

**JEROME C. NUNN,**

                **Debtor.**                            **Case No.: 04-02158-8-JRL**

**VOLVO COMMERCIAL FINANCE LLC
THE AMERICAS,**
                **Plaintiff,**

**vs.**                                           **Adversary Proceeding No.:
L-04-00197-8-AP**

**JEROME C. NUNN,**

                **Defendant.**

_____

## ORDER

       This matter is before the court on the plaintiff's motion for summary judgment. On February 2,

2006, the court conducted a hearing on this matter in Wilson, North Carolina.

## UNDISPUTED FACTS

1.      Custom Coach Corporation ("CCC") purchased the assets of Classic Coach Corporation in

          June of 1996.

2.      The defendant was the president and sole shareholder of CCC, which had its principal place of

          business in Columbus, Ohio.

3.      CCC was in the business of building, selling, and servicing motor homes or coaches.

4.      On October 11, 1999, the plaintiff and CCC entered into a floor plan financing agreement (the

"agreement"), whereby the defendant executed a promissory note in the amount of $2,000,000 in consideration for a loan by the plaintiff to CCC in this amount.

5.    The agreement contained a choice of law provision that lists North Carolina state law as the substantive law governing the agreement.

6.    The defendant also executed a State of Ohio UCC-1 financing statement acknowledging a first priority security interest held by the plaintiff in all inventory and accessories of CCC.

7.    The plaintiff failed to execute the agreement in the space provided for its acceptance.

8.    On the same date, the defendant executed and delivered to the plaintiff a continuing guaranty, whereby the defendant guaranteed the repayment of the promissory note.

9.    In paragraph 6, the parties provide for the automatic termination of the agreement on October 11, 2000, unless the defendant makes a written request to extend the agreement or the plaintiff notifies the defendant of its decision to renew the agreement.

10.    Neither the plaintiff nor the defendant formally renewed the agreement on or before October 11, 2000.

11.    In section 11, the parties provide that upon the sale of any item of inventory, CCC will pay the plaintiff an amount equal to the unpaid amount advanced by the plaintiff on said coach, plus interest and other charges.

12.    On October 20, 1999, the defendant made the first funding request under the agreement, which was granted.

13.    Each funding request was associated with a coach unit ( "unit") possessed by CCC and the requests continued through September 28, 2001.

2

14.    The agreement provided for monthly interest payments on the advances and curtailment

payments, in the event that a unit was not sold within a period of time.

15.    CCC did not make the required periodic interest payments, curtailment payments, or remit

payment after delivering a unit to a customer.

16.    The plaintiff advanced funds for a unit, known as the Demo Unit, which was ultimately

repossessed and sold by the plaintiff.

17.    CCC filed a Chapter 11 petition on April 18, 2002 in the Southern District of Ohio and its

assets were sold through a court-approved sale. The case was subsequently converted to

Chapter 7.

18.    The defendant filed a Chapter 7 petition with this court on May 17, 2004.

## PROCEDURAL HISTORY

On September 30, 2004, the plaintiff filed a complaint against Jerome C. Nunn to determine the

dischargeability of the debt owed to the plaintiff pursuant to 11 U.S.C. § 523(a)(6). The complaint also

seeks a judgment against the defendant in the amount of $3,204,853.69, plus interest from February 2,

2002 through October 1, 2004, plus interest at the legal rate until paid in full. The plaintiff asserts that

this amount represents the outstanding balance due to the plaintiff under the promissory note.

On October 29, 2004, the defendant filed an answer asserting general denials to the plaintiff's

allegations. The plaintiff filed this motion for summary judgment on October 4, 2005, supported by the

defendant's responses to the plaintiff's interrogatories, the defendant's responses to the plaintiff's

request for admissions, the defendant's deposition, the depositions of Joe L. Green, and the affidavit of

Patrick J. Shannon. In its memorandum in support of the motion, the plaintiff argues that it had a valid

3

security interest in certain units and proceeds from the sale of these units. It contends that its signature was not necessary to effectuate its acceptance of the agreement.

The plaintiff also asserts that its agreement with CCC did not expire on October 11, 2000, due to the parties' continued performance and acceptance of performance. The defendant knew about the security interest; therefore, the plaintiff argues that any injury by the defendant to the plaintiff's security interest was willful and malicious. As such, the defendant is personally liable for the resulting harm to the plaintiff.

In his memorandum opposing summary judgment, the defendant argues that the plaintiff did not have a security interest in the units identified in the complaint because they were owned by third parties. Under North Carolina law, a security interest is only enforceable if the debtor has rights in the collateral.[1] The defendant also asserts that the agreement expired by its own terms and any advances made by the plaintiff after October 11, 2000 are unsecured debts.

If the plaintiff is found to have an enforceable security interest, the defendant contends that the failure of CCC to pay the debt does not constitute a willful and malicious injury to the plaintiff. Further, the course of dealings between CCC and the plaintiff prevents the application of the § 523(a)(6) exception to discharge. By allegedly failing to protect its security interest, the plaintiff consented to the defendant's conduct and therefore, the defendant asserts it was not willful and malicious. In addition, the defendant argues that the determination of a § 523(a)(6) action requires examination of his subjective intent. The defendant's memorandum is supported by his affidavit.

---

[1] See N.C.G.S. § 25-9-203(b) (2005).

4

## STANDARD OF REVIEW

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

I.      Acceptance of the Agreement

Acceptance of an agreement can be manifested by a written signature or "by performing or refraining from performing a specified act." Durant v. Powell, 215 N.C. 628, 633 (1939). See also Snyder v. Freeman, 300 N.C. 204, 218 (1980) ("Acceptance by conduct is a valid acceptance."). The plaintiff in this case did not execute its agreement with CCC. However, on October 22, 1999, it advanced funds in the amount of $300,000 to CCC for the completion of a unit.  The plaintiff asserts that this conduct manifests acceptance of the agreement and thus, a written signature was not necessary.

The court finds that under North Carolina state law, the advancement of funds to CCC constituted acceptance of the agreement. A written signature is not required as the plaintiff performed a specified act according to the terms of the agreement between the parties. The agreement was therefore, enforceable in 1999. The court will determine at trial whether the agreement was enforceable after October 11, 2000 or whether it expired by operation of the termination provision.

5

II.    <u>Continuing Guaranty</u>

In <u>Wachovia Bank, N.A. v. Stewart</u> (<u>In re Stewart</u>), this court found that "although officers and directors of a corporation generally are not liable for the debts of the corporation, they are personally liable to the extent that their participation in the commission of a tortious act results in harm to a third party." L-02-00048-8-AP, *8 (Bankr. E.D.N.C. November 6, 2002). This principle applies in the "bankruptcy context" when an officer's conduct is shown to involve a willful and malicious injury. <u>Id.</u>; <u>World Omni Fin. Corp. v. Collins</u> (<u>In re Collins</u>), 151 B.R. 967, 970 (Bankr. M.D. Fla. 1993). In such cases, the "resulting personal debt of the officer is nondischargeable under § 523(a)(6)." <u>In re Stewart</u>, L-02-00048-8-AP, at *8; <u>Central Fidelity Bank v. Higginbotham</u> (<u>In re Higginbotham</u>), 117 B.R. 211, 215 (Bankr. E.D. Va. 1990).

In this case, the defendant was the president and sole shareholder of CCC. He testified that he was involved in the day-to-day operations of the corporation and executed a continuing guaranty of the promissory note with the plaintiff. The court finds that if it is determined at trial that the defendant's conduct was willful and malicious and an injury occurred, the defendant may be personally liable for the resulting injury to the plaintiff.

## CONCLUSION

Based on a review of the pleadings, affidavits, depositions, admissions, and answers to interrogatories, the court finds that material issues of fact exist in this proceeding. There is a material issue as to whether the agreement expired in 2000 or whether a different agreement arose after the expiration date through the conduct of the parties. There is a material issue as to whether the plaintiff had a security interest in the units possessed by CCC. There is a material issue as to the defendant's intent. The only

6

issues for which there are no material issues of fact are: 1) the agreement was accepted through performance by the plaintiff in 1999, and 2) the defendant may be held personally liable for a willful and malicious injury to the plaintiff. Accordingly, the plaintiff's motion for summary judgment is denied.

**So Ordered.**

**Dated:  February 8, 2006**

J. Rich Leonard
United States Bankruptcy Judge